**IN THE COURT OF COMMON PLEAS**
**FOR HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| MICHAEL MANNING<br>6328 Hillside Avenue,<br>Cincinnati, OH 45233<br><br>Plaintiff,<br><br>v.<br><br>ACG FEDERAL RESERVE, LLC<br>d/b/a Reserve at 4th and Race<br>105 W 4th Street,<br>Cincinnati, OH 45202<br><br>**Serve also:**<br><br>ACG FEDERAL RESERVE, LLC<br>d/b/a Reserve at 4th and Race<br>c/o FBT Ohio, INC.<br>(Statutory Agent)<br>3300 Great American Tower<br>301 East Fourth Street,<br>Cincinnati, OH 45202<br><br>Defendant. | ) | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff Michael Manning by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Manning is a resident of the city of Cincinnati, Hamilton County, Ohio.
2. Defendant ACG FEDERAL RESERVE, LLC ("ACG") is a domestic-incorporated, for-profit company that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 105 W 4th Street, Cincinnati, Ohio 45202.

3. ACG is, and was at all times hereinafter mentioned, Manning's employer within the meaning of the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, R.C. § 4113.15(A), and R.C. § 4112 *et seq*.
4. Within 300 days of the adverse employment actions described herein, Manning filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), Charge No. 473-2021-00874. ("EEOC Charge").
5. On or around July 29, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Manning regarding the EEOC Charge.
6. Manning received the Right to Sue Letter from the EEOC in accordance with 42 U.S.C. §2000e-5(f)(1), which have been attached hereto as Plaintiff's Exhibit 1.
7. Manning has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.
8. Manning has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**JURISDICTION & VENUE**

9. The material events alleged in this Complaint occurred in or around Hamilton County, Ohio.
10. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).
11. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).
12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Manning is a former employee of ACG.
14. At all times noted herein, Manning was qualified for his position with ACG.
15. At all times noted herein, Manning could fully perform the essential functions of his job, with or without a reasonable accommodation.
16. During his employment, Manning was diagnosed with pancreatitis therefore placing him in a protected class for his disability.
17. Manning worked for ACG as a Maintenance Technician from October 6, 2020, until ACG wrongfully terminated Manning's employment on or about October 20, 2020.
18. Manning never received any formal training for his position with ACG.
19. Instead of training, ACG gave Manning a tour and a set of keys, and then told him to get to work and to ask questions if he needed help.
20. From the beginning, Manning thought the ACG building was disorganized.
21. The disorganization made it difficult for Manning to locate supplies throughout his department, and he found himself wasting time calling his managers for help.
22. Manning tried to call the other Maintenance Technician at ACG, Paul Koch, for help, but Koch was often unavailable or too lazy to help.
23. Manning also noticed that many things around the building were half-fixed.
24. It soon became clear to Manning that the unfinished jobs and disorganization were the result of Koch's laziness and habit of hiding in the break room instead of working.
25. Manning reported Koch's conduct to Manager Mike Holland.
26. Eventually, Manning set out to improve the maintenance department.

27. For example, Manning notified Mike Holland of some fire hazards that presented unsafe working conditions. This was a protected report of workplace and public safety.
28. After his first week, Mike Holland pulled Manning aside and told him that Koch felt like Manning was stepping on his toes around the building.
29. Building Manager Emily Holland flatly told Manning to stop reporting Koch's behavior.
30. Manning pushed back at this, explaining that if Koch fixed his behavior the whole department would run smoother.
31. On or around October 13, 2020, Manning went to work with stomach problems and a migraine.
32. Manning went to Emily Holland and requested to go home and rest.
33. Emily Holland was very upset about Manning's request, so Manning retracted it and worked through the pain.
34. The next day on or around October 14, 2020, Manning's pain grew worse, so Manning went to the doctor.
35. Manning gave his supervisors notice that he was going to see a doctor.
36. Manning's doctor told him to stay home until October 16, 2020.
37. On or around October 15, 2020, Manning went to see a different doctor who suspected Manning's symptoms were indicative of pancreatitis.
38. The second doctor gave Manning a prescription for acid reflux medication, referred him to a gastroenterologist, and gave him a doctor's note instructing him to stay home until October 21, 2020.
39. Manning notified Mike Holland of this doctors note via text, thus imputing knowledge of his disability upon ACG.

40. On or around October 20, 2020, Manning went to work to give the second doctor's note to his managers.
41. Manning was met by Emily Holland, who explained that she was confused: she was still under the impression that Manning was to return to work on October 15, 2020.
42. Manning explained that he was still sick on October 15, 2020, and that a second doctor gave him a doctor's note extending his return-to-work date to October 21, 2020.
43. Mike Holland said that there must have been a miscommunication because he never received a text from Manning about the second doctor's note.
44. Manning apologized and was explaining his potential pancreatitis diagnosis when Emily Holland suddenly interrupted him. This was additional notice of his disability.
45. Emily Holland abruptly insisted that Manning employment was simply not working out and that he was fired.
46. Shocked, Manning asked if her was getting fired for being sick.
47. Emily Holland responded no, but rather for discrepancies related to his return-to-work date.
48. Manning tried to push back, but Emily Holland insisted that things were not working out and refused to explain further.
49. Manning was subsequently escorted out of the building by Mike Holland.
50. On or around October 23, 2020, Manning was contacted by Mike and Emily Holland who told him to come and pick up his paycheck.
51. Manning tried to pick up his paycheck but waited for an hour before leaving empty-handed.
52. Later that day, Manning called Emily Holland and asked about his paycheck.
53. Emily Holland told Manning that the check would be mailed to his house.

54. When Manning eventually received the check, it was for only 38 hours with two hours deducted for lunch breaks despite Manning never taking a lunch break.
55. ACG's purported reason(s) for Manning's employment termination was clearly pretextual.
56. ACG actually terminated Manning's employment discriminatorily against his disability, in violation of public policy, and in violation of the Ohio Wage Act.
57. As a result of the above, Manning has suffered and will continue to suffer damages.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.***

58. Manning restates each and every prior paragraph of this Complaint, as if it were fully restated herein.
59. On or around October 13, 2020, Manning began experiencing symptoms of pancreatitis and sought medical diagnoses and treatment.
60. Manning was referred to a gastroenterologist and was seeking further diagnoses and treatment when his employment with ACG was suddenly terminated.
61. Manning's condition constituted a physical impairment.
62. Manning's condition substantially impaired one or more of his major life activities including working.
63. In the alternative, ACG perceived Manning as being disabled in which ACG perceived Manning's condition to substantially impair one or more of his major life activities including working.
64. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.
65. ACG treated Manning differently than other similarly situated employees based upon his disability.

66. Alternatively, ACG treated Manning differently than other similarly situated employees based on his perceived disabling condition.

67. On or around October 20, 2020, ACG terminated Manning's employment without just cause.

68. ACG's termination of Manning's employment was an adverse employment action against him.

69. ACG's purported reason(s) for Manning's employment termination was pretextual.

70. ACG actually terminated Manning's employment due to his disabilities.

71. Alternatively, ACG terminated Manning's employment due to his perceived disabilities.

72. ACG violated R.C. § 4112 *et seq*. by terminating Manning's employment because of his disabilities.

73. Alternatively, ACG violated R.C. § 4112 *et seq*., by terminating Manning's employment because of his perceived disabling condition.

74. ACG violated R.C. § 4112 *et seq*., by treating Manning differently from other similarly situated employees outside his protected class.

75. ACG violated R.C. § 4112 *et seq*., by applying its employment policies in a disparate manner based on Manning's disabilities.

76. ACG violated R.C. § 4112 *et seq*., by applying its disciplinary policies in a disparate manner based on Manning's disabilities.

77. As a direct and proximate result of Defendants' acts and omissions, Manning has suffered and will continue to suffer damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

78. Manning restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. On or around October 13, 2020, Manning began experiencing symptoms of pancreatitis and sought medical diagnoses and treatment.

80. Manning was referred to a gastroenterologist and was seeking further diagnoses and treatment when his employment with ACG was suddenly terminated.

81. Manning's condition constituted a physical impairment.

82. Manning's condition substantially impaired one or more of his major life activities including working.

83. In the alternative, ACG perceived Manning as being disabled in which ACG perceived Manning's condition to substantially impair one or more of his major life activities including working.

84. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

85. ACG treated Manning differently than other similarly situated employees based upon his disabilities.

86. Alternatively, ACG treated Manning differently than other similarly situated employees based on his perceived disabling condition.

87. On or around October 20, 2020, ACG terminated Manning's employment without just cause.

88. ACG's termination of Manning's employment was an adverse employment action against him.

89. ACG's purported reason(s) for Manning's employment termination was pretextual.
90. ACG actually terminated Manning's employment due to his disabilities.
91. Alternatively, ACG terminated Manning's employment due to his perceived disabilities.
92. ACG violated the ADA by terminating Manning's employment because of his disabilities.
93. Alternatively, ACG violated the ADA by terminating Manning's employment because of his perceived disabling condition.
94. ACG violated the ADA by treating Manning differently from other similarly situated employees outside his protected class.
95. ACG violated the ADA by applying its employment policies in a disparate manner based on Manning's disabilities.
96. ACG violated the ADA by applying its disciplinary policies in a disparate manner based on Manning's disabilities.
97. As a direct and proximate result of ACG's acts and omissions, Manning has suffered and will continue to suffer damages.

**COUNT III: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

98. Manning restates each and every prior paragraph of this Complaint, as if it were fully restated herein.
99. A clear public policy is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in a protected activity under Ohio law.
100. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged

therein," and"[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe . . ."

101. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

102. Manning made protected public and employee safety complaints about fire hazards within the maintenance department.

103. Instead of adequately addressing Manning's complaints, Manning's supervisors told him to stop making his complaints because it was inconvenient for Manning's coworker Koch.

104. ACG's termination of Manning's employment jeopardizes these public policies.

105. ACG's termination of Manning's employment was motivated by conduct related to these public policies.

106. ACG had no overriding business justification for terminating Manning.

107. As a direct and proximate result of ACG's conduct, Manning has suffered and will continue to suffer damages.

**COUNT IV: VIOLATION OF THE OHIO WAGE ACT**

108. Manning restates each and every prior paragraph of this Complaint as if it were fully restated herein.

109. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. *See* R.C. §§ 4113.15(A).

110. During all times material to this Complaint, ACG was a covered employer required to comply with the Ohio Wage Act's mandates.

111. During all times material to this Complaint, Manning was a covered employee entitled to individual protection of Ohio Wage Act.

112. To the best of Manning's knowledge and belief, ACG did not have a policy requiring employees to take lunch breaks.

113. During his employment with ACG, Manning was told that employees could come and go as they pleased and could work through lunch if they desired.

114. Manning only received one paycheck while employed for ACG.

115. When Manning received his paycheck from ACG, it showed that he was paid for 38 hours instead of 40 hours.

116. Manning was expecting to receive a paycheck for 40 hours and inquired into why he was only receiving payment for 38 hours.

117. ACG explained that it deducted time from his paycheck for lunch breaks.

118. During Manning's employment with ACG, he never took a lunch break.

119. Defendant violated the Ohio Wage Act with respect to Manning by, *inter alia*, failing to compensate Manning for all hours worked.

120. In violating the Ohio Wage Act, ACG acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

121. As a direct and proximate result of ACG's conduct, Manning has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Manning demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Manning's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Manning for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Manning's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew Bruce
Matthew G. Bruce (0083769)
Trial Attorney
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Michael Manning*

**JURY DEMAND**

Plaintiff Michael Manning demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew Bruce
Matthew G. Bruce (0083769)